UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| AZZA ELAKHRASS,<br><br>                                          **Plaintiff,**<br><br>                 v.<br><br>NANCY A. BERRYHILL, Acting<br>Commissioner of Social Security,<br><br>                                          **Defendant.** | Civ. No. 17-923 (KM)<br><br>**OPINION** |

**KEVIN MCNULTY, U.S.D.J.:**

Ms. Azza Elakhrass brings this action pursuant to 45 U.S.C. § 405(g) to review a final decision of the Commissioner of Social Security ("Commissioner") denying her claims to Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-34. For the reasons set forth below, the decision of the Administrative Law Judge ("ALJ") is affirmed.

## I.    BACKGROUND[1]

Ms. Elakhrass seeks to reverse a decision that she did not meet the Social Security Act's definition of disability. Ms. Elakhrass originally applied for DIB on March 1, 2013. The claim was denied initially on August 28, 2013, and upon reconsideration on December, 2, 2013. (R. 17).

A hearing was held before an ALJ on March 28, 2013. Both the claimant and a vocational expert ("VE") testified. (Transcript at R. 27–65). On August 12, 2015, the ALJ rendered a decision denying benefits. (R. 14–26) On December 7,

---

[1] Citations to the record are abbreviated as follows:

"R." = Administrative Record (DE 6)

"Pl. Br." = Brief in Support of Plaintiff Elakhrass (DE 14)

"SSA Br." = Administration's responding brief (DE 16)

1

2016, the Appeals Council denied Ms. Elakhrass's request for review of the ALJ's decision, rendering it the final decision of the Commissioner. (R. 1)

Ms. Elakhrass appealed to this Court, asserting that the ALJ erred in finding that she was not disabled from an onset date of January 1, 2011, through March 31, 2013, the date last insured. Although initially assigned to a Magistrate Judge, the case was informally transferred back to me for decision on November 2, 2018, and formally transferred on November 8, 2018. (DE 18).

## II. DISCUSSION

To qualify for DIB (or Supplemental Security Income), a claimant must meet income and resource limitations and show that she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted (or can be expected to last) for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382, 1382c(a)(3)(A),(B); 20 C.F.R. § 416.905(a); *see Illig v. Comm'r Soc. Sec.*, 570 F. App'x 262, 264 (3d Cir. 2014); *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 503 (3d Cir. 2009).

### A. The Five-Step Process and This Court's Standard of Review

Under the authority of the Social Security Act, the Social Security Administration has established a five-step evaluation process for determining whether a claimant is entitled to benefits. 20 C.F.R. §§ 404.1520, 416.920. This Court's review necessarily incorporates a determination of whether the ALJ properly followed the five-step process prescribed by regulation. The steps may be briefly summarized as follows:

**Step One:** Determine whether the claimant has engaged in substantial gainful activity since the onset date of the alleged disability. 20 C.F.R. §§ 404.1520(b), 416.920(b). If not, move to step two.

**Step Two:** Determine if the claimant's alleged impairment, or combination of impairments, is "severe." *Id.* §§ 404.1520(c), 416.920(c). If the claimant has a severe impairment, move to step three.

2

**Step Three:** Determine whether the impairment meets or equals the criteria of any impairment found in the Listing of Impairments. 20 C.F.R. Pt. 404, subpt. P, app. 1, Pt. A. (Those Part A criteria are purposely set at a high level to identify clear cases of disability without further analysis.) If so, the claimant is automatically eligible to receive benefits; if not, move to step four. *Id.* §§ 404.1520(d), 416.920(d).

**Step Four:** Determine whether, despite any severe impairment, the claimant retains the Residual Functional Capacity ("RFC") to perform past relevant work. *Id.* §§ 404.1520(e)–(f), 416.920(e)–(f). If not, move to step five.

**Step Five:** At this point, the burden shifts to the Commissioner to demonstrate that the claimant, considering her age, education, work experience, and RFC, is capable of performing jobs that exist in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g); *see Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91-92 (3d Cir. 2007). If so, benefits will be denied; if not, they will be awarded.

As to all legal issues, this Court conducts a plenary review. *See Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999). As to factual findings, this Court adheres to the ALJ's findings, as long as they are supported by substantial evidence. *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (citing 42 U.S.C. § 405(g)). Where facts are disputed, this Court will "determine whether the administrative record contains substantial evidence supporting the findings." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Zirnsak v. Colvin*, 777 F.3d 607, 610 (3d Cir. 2014) (internal quotation marks and citation omitted). Substantial evidence "is more than a mere scintilla but may be somewhat less than a preponderance of the evidence." *Id.* (internal quotation marks and citation omitted).

> [I]n evaluating whether substantial evidence supports the ALJ's findings ... leniency should be shown in establishing the claimant's disability, and ... the Secretary's responsibility to rebut it should

3

be strictly construed. Due regard for the beneficent purposes of the
legislation requires that a more tolerant standard be used in this
administrative proceeding than is applicable in a typical suit in a
court of record where the adversary system prevails.

*Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003) (internal quotation marks and citations omitted). When there is substantial evidence to support the ALJ's factual findings, however, this Court must abide by them. *See Jones*, 364 F.3d at 503 (citing 42 U.S.C. § 405(g)); *Zirnsak*, 777 F.3d at 610-11 ("[W]e are mindful that we must not substitute our own judgment for that of the fact finder.").

This Court may, under 42 U.S.C. §§ 405(g), affirm, modify, or reverse the Commissioner's decision, or it may remand the matter to the Commissioner for a rehearing. *Podedworny v. Harris*, 745 F.2d 210, 221 (3d Cir. 1984); *Bordes v. Comm'r of Soc. Sec.*, 235 F. App'x 853, 865-66 (3d Cir. 2007).

Remand is proper if the record is incomplete, or if there is a lack of substantial evidence to support a definitive finding on one or more steps of the five-step inquiry. *See Podedworny*, 745 F.2d at 221-22. Remand is also proper if the ALJ's decision lacks adequate reasoning or support for its conclusions, or if it contains illogical or contradictory findings. *See Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119-20 (3d Cir. 2000). It is also proper to remand where the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted).

### B. The ALJ's Decision

ALJ Douglass Alvarado followed the five-step process in determining that Ms. Elakhrass was not disabled from January 1, 2011 through March 31, 2013 (the date last insured). His findings may be summarized as follows:

**Step One:** At step one, Judge Alvarado determined that Ms. Elakhrass had not engaged in substantial gainful activity since June 23, 2009, the amended onset date. (R. 19).

4

**Step Two:** At step two, the ALJ determined that Ms. Elakhrass had the following severe impairments: degenerative disc disease; osteoarthritis of the knees. (R. 19).

**Step Three:** At step three, the ALJ found that Ms. Elakhrass did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Pt. 404, subpt. P., app. 1. The ALJ made particular reference to Listings 1.02[2] and 1.04,[3]

---

[2]     **1.02 *Major dysfunction of a joint(s) (due to any cause)*:** Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:

A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b;

OR

B. Involvement of one major peripheral joint in each upper extremity (i.e., shoulder, elbow, or wrist-hand), resulting in inability to perform fine and gross movements effectively, as defined in 1.00B2c.

[3]     **1.04 *Disorders of the spine*** (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:

A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);

OR

B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;

OR

C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

5

finding that the claimant could use her upper and lower extremities effectively and did not have sensory or motor loss. (R. 19–20).

**Step Four:** At step four, the ALJ considered "the entire record," and found that the claimant "the residual functional capacity ["RFC"] to perform less than a full range of sedentary work as defined in 20 CFR 404.1567(a). She was able to lift and carry up to 10 pounds occasionally and less than 10 pounds frequently; able to stand and or walk up to two hours and to sit at least six hours out of an eight-hour workday. She was able to frequently use foot controls, frequently handle, finger and feel, could never climb ladders, ropes or operate a motor vehicle. She was able to frequently rotate her neck." (R. 20)

The ALJ found that Ms. Elakhrass's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." (R. 21)

The ALJ determined that Ms. Elakhrass was "capable of performing past relevant work as a controller and manager of a title company. This work did not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565)." (R. 22)

Therefore, Judge Alvarado did not proceed to step 5, but found that Ms. Elakhrass was "not disabled" under the Social Security Act. (R. 23).

### C. Analysis of Ms. Elakhrass's Appeal

As noted above, the inquiry ends at step 4 if, as here, the ALJ finds that a claimant is capable of performing past relevant work, either as generally performed in the national economy or as historically performed by her. Ms. Elakhrass challenges the ALJ's decision on two grounds. First, she says, her work as "controller" of a shipping company is irrelevant because she held that position too long ago. Second, she says, her more recent position as "manager" of a title company is beyond her RFC, primarily because she cannot rotate her neck or perform the necessary hand manipulations of the job.

SSR governs the "past relevant work" determination:

6

Social Security Regulation ("S.S.R.") 82–62 sets forth the evidence that an ALJ should consider in making this determination [regarding past relevant work]:

> The claimant is the primary source for vocational documentation, and statements by the claimant regarding past work are generally sufficient for determining the skill level, exertional demands and nonexertional demands of such work. Determination of the claimant's ability to do [past relevant work] requires a careful appraisal of (1) the individual's statements as to which past work requirements can no longer be met and the reason(s) for his or her inability to meet those requirements; (2) medical evidence establishing how the impairment limits ability to meet the physical and mental requirements of the work; and (3) in some cases, supplementary or corroborative information from other sources such as employers, the Dictionary of Occupational Titles, etc., on the requirements of the work as generally performed in the economy.

*Garibay v. Comm'r Of Soc. Sec.*, 336 F. App'x 152, 158 (3d Cir. 2009)

> Evaluating this evidence, the ALJ should determine whether "the claimant retains the capacity to perform the particular functional demands and job duties peculiar to an individual job as he or she actually performed it" or whether "the claimant retains the capacity to perform the functional demands and job duties of the job as ordinarily required by employers throughout the national economy." S.S.R. 82–61. In the latter inquiry, the ALJ may rely on job descriptions found in the Dictionary of Occupational Titles ("DOT"). Id. "[I]f the claimant cannot perform the excessive functional demands and/or job duties actually required in the former job but can perform the functional demands and job duties as generally required by employers throughout the economy, the claimant should be found to be 'not disabled.' " Id.

*Garibay*, 336 F. App'x at 158.

I note at the outset that some of the evidence offered by the claimant pertains to her medical condition after the date last insured (March 31, 2013). The ALJ's decision demonstrates that he had firmly in mind that the disability must be measured as of the period January 1, 2011 through March 31, 2013.

7

The evidence dating from after March 31, 2013 was considered by the ALJ, and I consider it, insofar as it bears on the existence of a disability in the relevant period.

### 1. Controller

Ms. Elakhrass was employed as a controller from 1983 to 1997. "Past relevant work," however, is defined to exclude employment that occurred more than fifteen years prior to the earlier of two relevant dates:

> We consider that your work experience applies when it was done within the last 15 years, lasted long enough for you to learn to do it, and was substantial gainful activity. We do not usually consider that work you did 15 years or more before the time we are deciding whether you are disabled (or when the disability insured status requirement was last met, if earlier) applies.

20 C.F.R. 404.1565(a).

Here, the earlier measuring date is the date last insured, March 31, 2013. Ms. Elakhrass left the controller position more than 15 years prior to that date, so it would not "usually" be considered under the regulation. The Administration concedes the point. (SSA Br. 9)

Any error, however, was obviously harmless. The ALJ found that Ms. Elakhrass was capable of performing past relevant work "as a controller **and** manager of a title company." (R. 22; emphasis added) The ALJ's finding as to the controller position, then, was at worst superfluous. The ALJ's finding must be sustained if, as to the more recent *manager* position, it was supported by substantial evidence. For the reasons expressed in the following section, it was.

### 2. Manager of title company

Ms. Elakhrass worked as a manager for the Urban Title Company from 2006 to 2007. (R. 39) Because she held that position within the 15-year period prescribed by the regulations, *see supra,* it constitutes past relevant work. Thus the ALJ was required to determine if she would have been capable of performing the duties of that position prior to her date last insured of March 31, 2013. See 20 C.F.R. § 404.131; *Matullo v. Bowen,* 926 F.2d 240 (3d Cir. 1990) (stating that claimant must establish disability prior to the expiration of

8

her insured status). Ms. Elakhrass argues that "[s]ubstantial evidence fails to support the ALJ's conclusion that Ms. Elakhrass retained the ability to frequently turn her neck or to frequently use her upper extremities to perform the significant reaching, handling, and fingering of the manager job." (Pl. Br. 13–14)

The ALJ duly noted Ms. Elakhrass's complaints and symptoms. He properly followed the prescribed procedures in considering them.[4] As he was entitled to do, the ALJ concluded that although the impairments were real, and could be expected to produce pain and other symptoms, the claimed intensity of such symptoms was not credible in the context of the medical evidence. Having determined the severity of such symptoms, he measured the claimant's RFC against the physical and mental demands of the past relevant work, relying in part on the testimony of a vocational expert (VE). The ALJ properly considered and weighed the evidence and concluded that the claimant had the RFC for a range of sedentary work, encompassed by her prior position as manager, with the ability to frequently rotate her neck and frequently handle, finger, and feel (R. 20).

The ALJ explicitly cited Dr. Summer's records of treatment dating from 2013. He noted that Ms. Elakhrass complained of neck and arm pain, with numbness and tingling of the upper extremities, and that x-rays suggested degenerative disc disease. (R. 21). Examination revealed tenderness of the cervical muscles, deceased sensation in the C-C8 dermatomes, full strength, and decreased range of motion. An MRI showed evidence of disc herniation at C4-5 with mild compression of the spinal cord. (R. 21).

---

[4]    First, the ALJ is to determine whether there is a medical impairment that could reasonably be expected to produce the alleged symptoms. 20 C.F.R. § 404.1529(b). Second, the ALJ must evaluate the intensity, persistence, and limiting effects of Plaintiff's symptoms to determine the extent they limit Plaintiff's ability to do basic work activities. 20 C.F.R. § 404.1529(c)(2). "Objective medical evidence . . . is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms..." 20 C.F.R. § 404.1529(c)(2). Other relevant information includes what may precipitate or aggravate the symptoms, medications and treatments, and daily living activities. 20 C.F.R. § 404.1529(c)(3).

The ALJ explained, however, that the claimant reported some relief as a result of conservative treatment. The claimant reported moderate pain relief with cervical radiofrequency ablation in December 2013. (R. 21, 214) In December 2013, after the last insured date, she reported being pleased with her progress (R. 214). There was no evidence that more aggressive treatment, such as surgery, was recommended or considered. (R. 21–22).

At the administrative hearing in August 2015—more than two years after her date last insured—Ms. Elakhrass was claiming her pain was worse than ever, but the ALJ observed that she had no difficulty rotating her neck to look at her attorney or the ALJ (R. 22, 55).

Certain evidence regarding knee symptoms dated from well after the insured date, but was nevertheless considered. (R. 21) After injections and other more conservative treatments in 2014, Ms. Elakhrass underwent knee replacement surgery in August–September 2014. In April 2015 she returned from a trip abroad and reported having done a lot of walking. In June 2015 she reported tightness but no knee pain. She did report neck and back pain, but no severe symptoms were noted. (R. 21)

On July 28, 2015, Dr. El-Dakka found the claimant permanently, totally disabled because she was hardly able to walk. Although he was a treating physician, the ALJ discounted his testimony because it dated from two years after the date last insured; it was inconsistent with all other medical evidence; and it did not reflect any familiarity with the SSA's definition of disability. (R. 21)

State Agency medical reviewers Dr. Freman and Dr. Yeager found that the record did not establish disability prior to the date last insured. The ALJ partially discounted Dr. Freman's opinion because he was opining outside of his specialty; he gave weight to Dr. Yeager's opinion because he was opining within his practice specialty, based on a full review of the medical evidence. (R. 21)

The ALJ noted Ms. Elakhrass's complaints of pain and other symptoms, including inability to use a keyboard for more than 15 minutes because of left

10

hand numbness that radiated from her neck. He noted that he found no supporting objective medical evidence from before the date last insured (R. 22). Plaintiff contends that the ALJ's finding was incorrect because Dr. Summer's March 25, 2013 progress notes documented her complaints of worsening neck pain, numbness and tingling, and decreased grip strength (R. 200; Pl. Br. 13). Mr. Summer's examination findings revealed normal motor functioning in the upper extremities, no deficits noted in any dermatomes tested, and full (5/5) strength (R. 201). Similarly, notwithstanding Plaintiff's claimed inability to rotate her neck, she demonstrated only slightly diminished cervical range of motion with left rotation at 60/80 and right rotation at 65/80 (R. 201).

The ALJ found other reasons to believe that her reports to Dr. Summer were exaggerated. She told Dr. Summer that she could not walk more than two blocks or stand more than 30 minutes, and needed to lie down much of the day because of knee pain. These complaints, the ALJ found, were not consistent with the medical evidence. (R. 22) She received conservative treatment in 2010, and reported improvement; in April 2013 she was noted to walk normally; in December 2013 she told her doctor she was leaving for Egypt (a lengthy flight). (R. 214) In April 2014 she reported having returned from Egypt and Europe, where she did a lot of walking, but noticed swelling of the knee. She underwent knee replacement in August–September 2014 (outside the relevant period), but medical treatment from 2010–14 was conservative. For these reasons, the ALJ was not persuaded by this evidence of disability. (R. 22) He noted the lack of objective medical testing results to support the alleged limitations in neck rotation and use of her hands prior to her date last insured. (R. 22).

For these reasons, substantial evidence supports the ALJ's finding that Plaintiff's cervical spine impairments did not preclude her ability to frequently rotate her neck or frequently handle, finger, and feel during the relevant period of her claim prior to her date last insured.

Ultimately, "[t]he credibility determinations of an administrative judge are virtually unreviewable on appeal." *Hoyman v. Colvin*, 606 F. App'x 678, 681

11

(3d Cir. 2015) (citing *Bieber v. Dep't of the Army*, 287 F.3d 1358, 1364 (Fed. Cir. 2002)). Credibility determinations are entitled to "great deference." *Horodenski v. Comm'r of Soc. Sec.*, 215 F. App'x 183, 188-89 (3d Cir. 2007) (citing *Atlantic Limousine, Inc. v. NLRB*, 243 F.3d 711, 718 (3d Cir. 2001)). What is required overall is that the ALJ give the claimant's testimony "serious consideration," state his reasons for accepting or discounting it, and make "specific findings." *Rowan v. Barnhart*, 67 F. App'x 725, 729 (3d Cir. 2003). Where, as here, this has been done, a reviewing court will defer to the ALJ's credibility determination.

The ALJ appropriately weighed the evidence, giving some credence to subjective complaints, discounting certain complaints in light of the objective medical evidence, and giving his reasons for doing so. In that manner, the ALJ arrived at a balanced assessment of the claimant's RFC and found that she could perform her past sedentary work as a manager. Because that assessment was supported by substantial evidence of record, it must be upheld.

## CONCLUSION

The ALJ's decision is affirmed. An appropriate order accompanies this opinion.

Dated: November 13, 2018

**KEVIN MCNULTY**
**United States District Judge**

12